UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY ROBERT KRUEGER,

        Petitioner,

                                                     Case No. 1:05-cv-326

v.

                                                     Hon. Wendell A. Miles

SHIRLEE HARRY,

        Respondent.
_____/

OPINION AND ORDER

      Petitioner, Gary Robert Krueger, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.  Following a bench trial in the Wayne County Circuit Court on November 12, 2001, Petitioner was convicted of assault with intent to commit murder in violation of MICH. COMP. LAWS § 750.83.  He was sentenced to a term of imprisonment of 8 to 15 years.  In an unpublished opinion, his conviction was affirmed by the Michigan Court of Appeals on September 2, 2003.  People v. Krueger, No. 240009, (Mich. Ct. App. 2003).  The Michigan Supreme Court denied review on February 27, 2004, because it "was not persuaded that the questions presented should be reviewed by this Court."  People v. Krueger, No. 124846, (Mich. 2004).  In his present pro se petition for habeas corpus relief, he raises the following claims:

        I.     The trial judge improperly applied the elements of assault with intent to murder to the facts.

        II.    The prosecutor's main witness gave false and conflicting testimony during the trial and preliminary exam.

        III.   The prosecutor failed in his duty to correct the false testimony of the complainant, John Brisebois.

    IV.    The prosecutor repeated and embellished the false testimony during the trial and in his closing argument.

    V.    The prosecutor suppressed material evidence pertaining to the severity of injuries and the witness's false testimony.

    VI.    The prosecutor violated the defendant's Fifth Amendment right to be free from compelled self-incrimination.

    VII.    Defense counsel was ineffective, making errors so serious that he did not function as counsel guaranteed by the Sixth Amendment.

The victim, John Brisebois testified at trial that on May 25, 2001, he was at his girlfriend Cathy Kobiela's house, in an upstairs bedroom with Ms. Kobiela, when someone knocked on the front door. After approximately five minutes, Ms. Kobiela went downstairs to answer the door. Mr. Brisebois heard someone say, "where is he?" Mr. Brisebois also heard Ms. Kobiela's voice, and from her tone he believed she was frightened. A few seconds later, Petitioner entered the bedroom, said "you are a dead man," and stabbed Mr. Brisebois in the stomach, lower back, bicep and left armpit. (Trial Transcript (Tr. T.), 16-25, docket #21). Mr. Brisebois punched Petitioner and knocked him onto the bed. He described the knife he saw in Petitioner's hand as thin, like a boning knife, with a four inch blade. (Tr. T., 27-28). Mr. Brisebois went downstairs and onto the front porch. Petitioner came outside, but said nothing to Mr. Brisebois and had no further contact with him. Police arrived and transported Mr. Brisebois to the Garden City Hospital, where he was treated for his injuries. (Tr. T., 35). Mr. Brisebois testified that the wound to his back penetrated his bowel, which required surgery. However, at the preliminary hearing, Mr. Brisebois testified that he had been given a CAT scan, which revealed no internal injuries. He remained in the hospital for approximately one week. (Tr. T.,35-36).

Ms. Kobiela testified that she had been Petitioner's girlfriend for eleven years. Sometime

after they ended their relationship, Petitioner wrote her a letter indicating he wanted to renew the relationship, but Ms. Kobiela informed him she was seeing someone else. (Tr. T., 46).  Her description of the events that occurred on the evening of the attack conformed to Mr. Brisebois's testimony.  (Tr. T., 55-58).  She testified that after opening the front door, she followed Petitioner upstairs, and saw blood everywhere. (Tr. T.,58).  She called 911. (Tr. T., 60).  Petitioner threw the knife down and began crying. (Tr. T., 61).  Ms. Kobiela stated that she was familiar with a butcher block that Petitioner had in his kitchen.  After being shown a post-incident picture of the butcher block, she testified that a boning knife was missing from the block.  (Tr. T., 49).

Allison Krueger, who is Ms. Kobiela and Petitioner's ten year old daughter, also testified.  According to Allison, she and her seven year old sister had gone to dinner with Petitioner and her grandfather.  During dinner there was a discussion about Mr. Brisebois, and Petitioner stated that he wanted to stab him. (Tr. T., 91-92).   After dinner, they stopped at Petitioner's house so the girls could pick up some toys from the basement.  Petitioner waited in the kitchen.  (Tr. T., 95).  Petitioner and his daughters returned to Ms. Kobiela's house, knocked on the door, went inside when the door was opened, and Petitioner ran upstairs. (Tr. T., 96).  Allison followed Petitioner upstairs. (Tr. T., 97).  Allison was frightened and began screaming, and when she went into the bedroom she saw Mr. Brisebois on the bed and bleeding, and a knife in Petitioner's hand. (Tr. T., 98-101).

Petitioner testified on his own behalf.  When Ms. Kobiela left Petitioner after their eleven year relationship, Petitioner was upset and made attempts to renew the relationship.  (Tr. T., 125).  On the evening of May 25, 2001, he and his father took his daughters to dinner, and

3

afterwards stopped at his home so the girls could pick up some toys. (Tr. T., 126-27). When they left to return to Ms. Kobiela's house, he took a knife from his kitchen, although he had no idea why he took it. (Tr. T., 127). When they arrived at Ms. Kobiela's house, there were no lights on. After knocking on the door, they waited approximately five minutes before Ms. Kobiela answered the door. This upset Petitioner. (Tr. T., 128). He went upstairs to confront Mr. Brisebois, but was not thinking about killing him. (Tr. T., 128-29). He pulled out his knife when he saw Mr. Brisebois, (Tr. T., 139), and remembered stabbing Mr. Brisebois, but he did not intend to kill him. (Tr. T., 130). When he and Mr. Brisebois had finally gone downstairs, he apologized to Mr. Brisebois. (Tr. T.,132). He was totally distraught about what he had done, and was under much emotional distress due to his break-up with Ms. Kobiela. (Tr. T., 134). He believed that he made the comment about wanting to stab Mr. Brisebois while he and his daughters were riding to Ms. Kobiela's house, rather than during dinner. (Tr. T., 137).

Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. Herbert v. Billy, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000). The Supreme Court has held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a cases differently than this Court has on a set of materially indistinguishable facts." Id. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 1522. Rather, the application must also be "unreasonable." Id. Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. Id. at 1522 (disavowing Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." Williams, 120 S. Ct. at 1522.

The AEDPA requires heightened respect for state factual findings. Herbert v. Billy, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. See Sumner v. Mata, 449 U.S. 539, 546 (1981); Smith v. Jago, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Warren v. Smith, 161 F.3d 360-61 (6th Cir. 1998).

### Claim I: The trial judge improperly applied the elements of assault with intent to murder to the facts.

Petitioner is asserting a sufficiency of the evidence claim. He contends that although the facts may establish that he acted with the intent to inflict great bodily harm, they do not establish that he acted with the intent to kill. A § 2254 challenge to the sufficiency of the evidence is governed by the standards set forth by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis added). This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Id. This court may not re-weigh evidence or redetermine witness credibility. See Herrera v. Collins, 506 U.S. 390, 401-02 (1993); Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution,

with specific reference to the elements of the crime as established by state law.  Jackson, 443 U.S. at 324 n.16; Allen v. Redman, 858 F.2d 1194, 1196-97 (6th Cir. 1988).  Where the record supports conflicting inferences, the court "must presume-even if it does not affirmatively appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wright v. West, 505 U.S. 277, 296-97 (1992).

Addressing the issue of sufficiency of the evidence, the Michigan Court of Appeals found that:

> Viewing the evidence in the light most favorable to the prosecution, we find that the prosecution presented sufficient evidence of defendant's intent to kill when assaulting the victim, defendant's ex-girlfriend's current boyfriend.  Prior to the assault, defendant told his children that he wanted to stab the victim.  Defendant took a knife from his home and drove a few miles to his ex-girlfriend's house.  Upon entering the home, defendant asked where the victim was, ran up the stairs, and attacked the victim, stabbing him four times, including in the stomach and kidney area.  The victim testified that before defendant stabbed him, defendant said, "you are a dead man."  Given these facts, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant intended to kill when he assaulted the victim. (Mich. Ct. App. Op., docket #23, *2).

In addition, the court notes that Petitioner testified that he was upset about the relationship between Ms. Kobiela and Mr. Brisebois. He was also upset when he and his daughters arrived at Ms. Kobiela's house and all the lights were off, and he had to wait five minutes for Ms. Kobiela to open the door.

The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. See MICH. COMP. LAWS § 750.83; People v. Hoffman, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997).  Intent is generally proved by circumstantial evidence, which is enough to withstand a sufficiency of the evidence challenge. United States v. Ellzey, 874 F.2d 324, 328 (6th Cir. 1989).  The circumstantial evidence need not "'remove every reasonable hypothesis except that of guilt.'" Id., quoting United States v. Stone, 748

F.2d 361, 363 (6th Cir. 1984). An intent to kill may be formed in an instant. It is not necessary that the intent exists in the mind of the defendant for any definite period of time. It is sufficient that it preceded the act, however short the interval. Lane v. Carlton, 149 F. App'x 374, 376 (6th Cir. 2005). Petitioner may not have intended to kill Mr. Brisebois when he took the knife from his kitchen and drove to Ms. Kobiela's house. However, considering his emotional state when Ms. Kobiela finally opened the door and he ran upstairs, stated "you are a dead man," and began stabbing Mr. Brisebois, a rational trier of fact could find that at the moment Petitioner began his assault he intended to kill Mr. Brisebois. The record demonstrates that the evidence presented at trial, viewed in a light most favorable to the government, constitutes sufficient evidence of intent. Accordingly, the Michigan Court of Appeal's decision was neither an unreasonable application of clearly established federal law, nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

      **Claim VII:**    **Defense counsel was ineffective, making errors so serious that he did not function as counsel guaranteed by the Sixth Amendment**.

Petitioner claims that his counsel was ineffective for failing to investigate, to interview witnesses, to request discovery from the prosecutor, to call a medical expert to testify regarding the victim's medical report, to call an expert to testify regarding Petitioner's mental state, and to object to the victim's false testimony. The Court of Appeals found the claim had no merit, as Petitioner had failed to show that counsel's actions were unreasonable or that he was prejudiced by counsel's actions. (Mich. Ct. of App. Op., *2-3)

In Strickland v. Washington, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that

counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Nagi v. United States, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. Id. at 691.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004) (quoting Strickland, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Petitioner cannot show that he was prejudiced by those particular omissions of trial counsel that he is challenging.  Prejudice requires the Petitioner to show "'not merely a . . . *possibility* of prejudice, but that [errors] worked to his actual and substantial disadvantage.'" Perkins v. LeCureux, 58 F.3d 214, 219 (6th Cir. 1995) (quoting United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original)).  That is, a petitioner must show that there is a

reasonable probability that but for trial counsel's performance, the trial outcome would have been different.  Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005).  The prejudice component of the test is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim.  Perkins, 58 F.3d at 219 (quoting Rust v. Zent, 17 F.3d 155, 161-62 (6th Cir. 1994).

The gravamen of Petitioner's ineffective assistance of counsel claim concerns Mr. Brisebois' conflicting testimony regarding the extent of his injuries.  Consistent with the medical records, Mr. Brisebois testified at the preliminary hearing that he suffered no internal injuries.  At trial, he testified that he sustained an injury to his bowels.  Petitioner refers to the trial court's statement that "[h]e took the weapon.  He plunged it into the abdomen.  That shows me an intent to kill," (Tr. T. 169), and argues:

> despite the length of the knife, the medical reports show that the
> deepest wound was 1.2" and that no internal organs were damaged.
> They would have shown the judge that, despite the size of the knife,
> it was not "plunged" into Brisebois' abdomen and he did not suffer
> the injuries he claimed.  This would have harmed his credibility in the
> factfinder's eyes.

(Petitioner's Reply, Docket #26, 4).  Whether Petitioner plunged, thrust, drove, or poked the knife into Mr. Brisebois' abdomen is not of particular significance.  Petitioner did not testify that while he was stabbing Mr. Brisebois, he carefully avoided the areas that might result in internal injuries or that he made any effort to cause shallow wounds.  It was simply fortuitous that Mr. Brisebois' injuries were not more serious.  The compelling facts that supports a conclusion that Petitioner intended to kill Mr. Brisebois are that Petitioner intentionally caused a boning knife to enter 1.2 inches into Mr. Brisebois' abdomen.  Introducing Mr. Brisebois' medical records or cross examining Mr. Brisebois about his inconsistent testimony would not refute these

compelling facts. Petitioner has not shown that there was a reasonable probability that the outcome would have been different had trial counsel performed differently. Accordingly, the Michigan Court of Appeal's decision was neither an unreasonable application of clearly established federal law, nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### Claims II through VI: Prosecutorial misconduct

Petitioner claims that the prosecutor engaged in misconduct by (1) by allowing the main witness, John Brisebois, to give false and conflicting testimony during the trial and preliminary exam (claims II and III); (2) by repeating and embellishing the false testimony during the trial and in his closing argument (claim IV); (3) by suppressing material evidence pertaining to John Brisebois's injuries (claim V); and, (4) by violating his Fifth Amendment right to be free from self incrimination (claim VI). The "false testimony" that Petitioner challenges is Mr. Brisebois's testimony at the preliminary hearing that he underwent a CAT scan, which revealed no internal damage, as compared to his trial testimony that the his bowel had been penetrated. Because Petitioner failed to preserve these issues for appeal by raising them in the trial court, the Court of Appeals reviewed only for plain error. The Michigan Court of Appeals addressed Petitioner's claims based upon the "false testimony" as follows:

> We find no plain error affecting defendant's substantial rights. Even if the precise nature and severity of the wounds were not as the victim testified, any inaccuracies do not negate the general seriousness of the attack. It was undisputed that defendant stabbed the victim several times, including in the stomach and kidney area. The victim's general testimony concerning the incident was supported by the testimony of several other witnesses, including defendant's. Defendant was not prejudiced by any alleged error such that it affected the outcome of his trial. Further, reversal of his conviction is not warranted on the basis that he is innocent or that the fairness, integrity, or public reputation of the judicial proceedings was undermined. (Mich. Ct. App. Op., *2).

As to the claims against the prosecutor's actions, the Court of Appeals stated:

> Again, we find no plain error affecting defendant's substantial rights. Because we find no prejudicial error with regard to the alleged inaccuracies in the victim's testimony, we similarly find no prejudicial error in the prosecutor's failure to correct the alleged inaccuracies or inconsistencies between the victim's preliminary examination testimony and his trial testimony. Likewise, we find no error requiring reversal in the prosecutor's reference to the severity or nature of the victim's injuries in closing argument. A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence, but is free to argue the evidence and all reasonable inferences as they relate to the theories of the case. People v. Schutte, 240 Mich.App 713, 721; 613 NW2d 370 (2000). A prosecutor need not state an argument in the blandest possible terms. People v. Aldrich, 246 Mich.App 101, 112; 631 NW2d 67 (2001). Defendant has failed to show error in the prosecutor's failure to fully investigate and seek admission of the victim's medical records as evidence. As discussed above, we find no basis for appellate relief based on alleged error concerning the nature and severity of the victim's wounds. (Mich. Ct. App. Op., *2).

Regarding the compelled self-incrimination claim, the Court of Appeals found that Petitioner "failed to show that he was prejudiced by the prosecutor's alleged use of terminology from defendant's psychiatric examination. We cannot conclude that any alleged error affected defendant's substantial rights." (Mich. Ct. App. Op., *2).

A procedural default occurs where, as here, the petitioner failed to comply with a state procedural rule that required him to have done something at trial to preserve an issue for appellate review. United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202-03 (6th Cir. 1996). In the Sixth Circuit, "plain error review" by the state appellate court "does not constitute a waiver of state procedural default rules." Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000) (citations omitted); Scott v. Mitchell, 209 F.3d 854, 866-68 (6th Cir. 2000); see also Coe v. Bell, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); McBee v.

Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991) (same); Paprocki v. Foltz, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"). The United States Supreme Court explained that:

> In all cases in which a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. To show cause sufficient to excuse a procedural default, a petitioner must point to "some objective factor external to the defense" that caused the default. See Engle v. Isaac, 456 U.S. 107,134 n.43 (1982); Leroy v. Marshall, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner argues that the "cause" for his default is that he did not receive Mr. Brisebois's medical reports until three months after the trial, and therefore, was not able to raise the claims on direct appeal. Petitioner, however, misconstrues the term "procedural default." The claims were not procedurally defaulted because he failed to raise them on direct appeal. In fact, he did raise them on appeal to the Michigan Court of Appeals and the Michigan Supreme Court. The claims were procedurally defaulted because he failed to preserve them for review during the trial proceedings. Accordingly, the court is precluded from reviewing these procedurally defaulted claims. See Harris v. Reed, 489 U.S. 255, 262 (1989) (holding that a federal claimant's procedural default precludes habeas review if the last state court rendering a judgment in the case rests its judgment on the procedural default).

## Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (docket # 1) is DENIED.

So ordered this 18th day of August, 2008.

                                         /s/ Wendell A. Miles
                                         Wendell A. Miles
                                         Senior U.S. District Judge